## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| RICHARD MARCH and BELINDA HOLLINS individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>Defendant. | Case No. _____<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs Richard March and Belinda Hollins ("Plaintiffs") bring this Class and Collective Action Complaint against Defendant Bank of America, N.A. ("Bank of America") on behalf of themselves and all others similarly situated, stating and alleging the following:

### NATURE OF THE ACTION

1.      In response to the COVID-19 outbreak, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), which allocated significant funding for loans to small businesses affected by the pandemic and resulting economic downturn. This loan measure—dubbed the Paycheck Protection Program (PPP)—was to be administered by the federal Small Business Administration in conjunction with the Department of the Treasury.

2.      But the federal government lacked the capacity to administer this program on its own. Instead, it turned to large financial institutions like Bank of America, which had the existing infrastructure to process large numbers of loans.

3.      For companies like Bank of America, the task of processing and disbursing loans through the PPP program promised to be a highly profitable one. Financial institutions were paid a percentage of each loan they administered on a sliding scale; 5% of each loan up to $350,000 and 1% of each loan over $2 million.

1

4.    But for the loan officers and consultants required to work on the program, prospects were much less rosy. Most of these workers were paid on an hourly basis and made much of their income through commissions on loans they originated and processed. But PPP loans promised no such commissions, and instead would take the workers' time away from more profitable, commissioned work.

5.    To induce workers to remain with Bank of America and induce them to work steadily and efficiently on the company's lucrative PPP loan program and to replace otherwise profitable commissions for loan origination, Bank of America offered nondiscretionary incentive pay related to processing PPP loans (hereafter "nondiscretionary PPP incentive pay"). For some, this nondiscretionary PPP incentive pay was calculated based on their average earnings, including all commissions, for the three months preceding the start of the pandemic. For others, it took the form of a straightforward increase to their usual hourly pay rate. And on occasion, the company offered premium pay rates to employees who worked arduous extra hours on certain days contributing to the PPP loan program.

6.    But while this nondiscretionary PPP incentive pay rate was used to calculate the workers' regular hour earnings, it was not reflected in their overtime pay. Instead, overtime was paid at a rate of one-and-a-half times the worker's *lower, pre-pandemic* base hourly rate, without including the nondiscretionary PPP incentive pay. This meant that workers were not paid overtime based on their actual regular rate of pay for a given workweek, but rather were paid overtime calculated from a lower amount.

7.    This is in contrast to how the company treated the loan officers' commissions both before and after the PPP program.  For example, at the end of each month, the loan officers' commission pay is retroactively added to the regular rate of pay for any workweeks where the

given loan officer worked more than 40 hours. However, for this nondiscretionary PPP incentive pay—that was intended to approximate and replace commission pay—Bank of America refused to include it in the regular rate of pay.

8.    In addition, some employees who were classified as exempt and not entitled to overtime pay were assigned to work on the PPP loan program, which consisted of non-exempt, ministerial work relating to the processing of loan applications. Those employees were misclassified for the duration of their work on the PPP loan program, and as a result, were not paid any overtime premiums for their substantial overtime work.

9.    As a result of this practice, workers who stepped up to the critical work of administering the PPP loan program were short-changed the wages they were owed. As explained below, many Bank of America employees, including Plaintiffs, worked long hours and significant overtime throughout the pandemic to ensure the nation's small businesses had the resources they needed to stay afloat. This suit seeks to recover for them the wages and penalties they are owed under the law.

## **PARTIES, JURISDICTION, AND VENUE**

10.    Plaintiff Richard March is a citizen and resident of Kansas who at all times relevant to this suit worked for Bank of America within the state of Kansas. His written Consent to Join this case is attached and incorporated as **Exhibit 1**.

11.    Plaintiff Belinda Hollins is a citizen and resident of Kansas who at all times relevant to this suit worked for Bank of America within the state of Kansas. Her written Consent to Join this case is attached and incorporated as **Exhibit 2**.

12.    Defendant Bank of America, N.A. is a national association having its principal place of business in North Carolina.

13.     This Court has subject matter jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a proposed class action in which: (1) there are at least 100 class members; (2) the combined claims of class members exceed $5,000,000.00, exclusive of interest, attorneys' fees, and costs; and (3) Bank of America and at least one class member are citizens of different states. This Court also has subject matter jurisdiction over the Fair Labor Standards Act claims of Plaintiffs and all others similarly situated pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and over all related state law claims pursuant to 28 U.S.C. § 1367.

14.     This Court has personal jurisdiction over Bank of America because it regularly conducts business in Kansas, and the claims of Plaintiffs arose within the state of Kansas. Additionally, the Court has personal jurisdiction over the claims of Bank of America employees who worked outside the state of Kansas who may opt in to participate as party plaintiffs pursuant to 29 U.S.C. § 216(b) in conjunction with K.S.A. § 17-7931 and/or K.S.A. § 17-7307.

15.     Venue is proper in this district under 28 U.S.C. § 1391(b) because Bank of America resides within this district, and a substantial part of the events giving rise to the claims at issue occurred in this district, as one or more Plaintiffs and putative class members performed work subject to this suit within the boundaries of this district.

## FACTS RELEVANT TO ALL CLAIMS

16.     Bank of America began administering and processing PPP loans on or about April 1, 2020, whereupon the company started offering loan officers, loan consultants, and others nondiscretionary PPP incentive pay for work on the program. Upon information and belief, this program and incentive pay continued until approximately May 2021.

17.     For the first few weeks of the PPP program, Bank of America demonstrated that it understood how to pay its loan officers in compliance with the Fair Labor Standards Act and state overtime laws by including nondiscretionary PPP incentive pay as part of these workers' regular rates when they worked over 40 hours in a workweek.

18.     That changed on or about April 27, 2020. At that point, the company decided that these new rates were "inflated," at least for the purposes of calculating overtime. It then reverted to using employees' earlier base hourly rate that was in effect before the PPP loan program began when determining the employee's "regular rate" when calculating their compensation for any overtime hours worked.

19.     As a matter of law, and as Bank of America was fully aware, that determination was incorrect. Instead, an employee's regular rate must be calculated by including all renumeration paid to an employee (subject to statutory exceptions not relevant here) actually paid the employee for each separate workweek. 29 C.F.R. § 778.108.

20.     Nondiscretionary PPP incentive pay was often denoted on employees' paystubs as a miscellaneous nondiscretionary award ("Misc NonDiscr Awrd"). These amounts were excluded from the employee's regular rate of pay when calculating overtime.

21.     Nondiscretionary PPP incentive pay included an increased hourly rate for regular, non-overtime hours worked. Upon information and belief, for many employees, this rate was calculated based on an average of their total compensation, including all commissions, in addition to hourly earnings, for the months of December 2019 through February 2020.

22.     Nondiscretionary PPP incentive pay also included premium rates offered for extra work on certain days for work on the program. For instance, during the summer of 2020, some employees were offered premium pay doubling their hourly rate for extra and arduous work

spent on the PPP loan program. And, for example, for the weekend of May 9-11, 2020, Bank of America offered employees three times their hourly base pay rate for work on the PPP loan program.

23.     This premium pay was intended to induce employees to perform more work on the PPP loan program, work that was difficult, unfamiliar, arduous, and (due to the lack of commissions) relatively unremunerative for employees, but highly lucrative for Bank of America. The premium pay for extra work was available only for work on the PPP loan program, and only during certain set times. It was not limited to non-exempt hourly workers, as salaried employees were eligible for similar incentive payments.

24.     Neither form of nondiscretionary PPP incentive pay—the hourly rate increase or the premium pay for extra work—were included in employees' regular rates when Bank of America calculated and paid their overtime.

25.     By failing to include nondiscretionary PPP incentive pay—a significant part of an employee's total weekly earnings—Bank of America violated the law and miscalculated its employees' regular rates of pay.

26.     This was compounded by the fact that Bank of America required these employees to perform extraordinary amounts of overtime, often exceeding 70 hours of work per week. Thus, failing to include this compensation in the workers' regular rate of pay meant that they were significantly underpaid what they were owed.

27.     As a result, Bank of America employees earning nondiscretionary PPP incentive pay were underpaid for each hour of overtime they worked.

28      Plaintiff Richard March was an hourly, non-exempt credit solutions advisor who worked for Bank of America in the state of Kansas from 2019 through April 2023. He worked on

the PPP loan program and received nondiscretionary PPP incentive pay that was excluded from his regular rate when calculating and paying overtime.

29      Throughout the PPP loan program, Plaintiff March worked a substantial amount of overtime hours, often more than thirty (30) in a workweek. These overtime hours were paid at a rate of one-and-a-half times his earlier, lower hourly rate in effect prior to the PPP loan program and did not include his nondiscretionary PPP incentive pay.

30      For instance, during the two-week pay period from April 27, 2020 through May 10, 2020, Plaintiff March worked at least 62.083 overtime hours. This work was paid at a rate of $30 per hour, or one-and-a-half times his base hourly rate of $20 per hour. Bank of America did not include the nondiscretionary PPP incentive pay he earned during that period as part of his regular rate, and as a result, underpaid him for his overtime hours worked.

31      Plaintiff Belinda Hollins is an hourly, non-exempt credit solutions advisor who works for Bank of America in the state of Kansas. She worked on the PPP loan program and received nondiscretionary PPP incentive pay that was excluded from her regular rate when calculating and paying overtime.

32      Throughout the PPP loan program, Plaintiff Hollins worked a substantial amount of overtime hours, often more than thirty (30) in a workweek. These overtime hours were paid at a rate of approximately one-and-a-half times her earlier, lower hourly rate in effect prior to the PPP loan program and did not include her nondiscretionary PPP incentive pay.

33      For instance, during the two-week pay period from May 25, 2020 through June 7, 2020, Plaintiff Hollins worked at least 49.05 overtime hours. This work was paid at a rate of $30 per hour, or one-and-a-half times her base hourly rate of $20 per hour. Bank of America did not

include the nondiscretionary PPP incentive pay she earned during that period as part of her regular rate, and as a result, underpaid her for her overtime hours worked.

34.    Other similarly situated employees were classified as exempt and not paid overtime in conjunction with their regular work for Bank of America. These classifications became erroneous upon their assignment to work on the PPP loan program, which consisted chiefly of loan processing and other non-exempt job duties. As a result of this misclassification, said employees were not paid any overtime premiums for their work on the PPP loan program.

35.    As a result of Bank of America improperly using lower rates when calculating overtime, and in some cases, failing to pay overtime at all, Plaintiffs and similarly situated employees were paid less than the amount to which they were entitled by law for each hour of overtime worked.

## ALLEGATIONS APPLICABLE TO THE FLSA

36.    At all times material herein, Plaintiffs and all others similarly situated have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

37.    The FLSA regulates, among other things, the payment of minimum wage and overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.  29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1). Bank of America is subject to the minimum wage and overtime pay requirements of the FLSA because it operates an enterprise engaged in interstate commerce and its employees are engaged in commerce.

38.    During all relevant times to this action, Bank of America acted as the "employer" of Plaintiffs and all similarly situated employees within the meaning of the FLSA.  29 U.S.C. § 203(d).

39.    During all times relevant to this action, Plaintiffs and all similarly situated employees were Bank of America's "employees" within the meaning of the FLSA.  29 U.S.C. § 203(e).

40.    Pursuant to the FLSA, employees are entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek.  29 U.S.C. § 207(a).

41.    Although the FLSA contains some exceptions (or exemptions) from the overtime requirements, none of those exceptions (or exemptions) applies here.

42.    Plaintiffs and all similarly situated employees are victims of uniform and unlawful compensation policies.

43.    Plaintiffs and all similarly situated employees are entitled to damages equal to the mandated minimum wage and overtime premium pay within the three (3) years preceding the filing of the Class and Collective Action Complaint, plus periods of equitable tolling, because Bank of America acted willfully and knew, or showed reckless disregard of whether its conduct was prohibited by the FLSA. Bank of America's policies alleged herein constituted a willful violation of the FLSA in that, *inter alia*:

- At the start of the PPP loan program, Bank of America initially calculated and paid overtime correctly. From approximately April 1, 2020 to April 27, 2020, Bank of America included nondiscretionary PPP incentive pay in its employees' regular rates when paying overtime. However, on a conference

call with employees working on the PPP loan program, Bank of America incorrectly and misleadingly claimed that these overtime rates were "inflated", and stated that starting April 27, 2020, rates used to calculate overtime would revert to the employees' lower base hourly rate in effect prior to the start of the program;

- Bank of America attempted to conceal the true nature of its overtime pay practices relating to employees working on the PPP loan program, including by disseminating opaque, confusing, and misleading communications and policies concerning how overtime was calculated and paid, by failing to explain to employees how their pay was calculated, and by providing paystubs and records that failed to convey how the amount paid was calculated;

- To further this deception, Bank of America took pains to ensure that its overtime pay practices for employees working on the PPP loan program were not put in writing. For instance, during the aforementioned conference call discussing compensation and payment of overtime for the PPP loan program, Bank of America management told employees "we're not circulating this in writing, so do listen carefully." On other occasions, employees were explicitly instructed not to forward emails regarding compensation for work on the PPP loan program to anyone outside the Bank of America organization; and

- Bank of America calculated portions of the employees' nondiscretionary PPP incentive pay based on the employees' total compensation, including all commissions, from the months of December 2019 to February 2020, and this pay was intended to compensate the employees for their commission earnings,

which would not be available for their work on the PPP loan program. Bank of America knew that commission earnings were unambiguously required to be included in its employees' regular rate when calculating overtime under the FLSA.

44.     Bank of America has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result, Plaintiffs and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b).  Alternatively, should the Court find Bank of America acted in good faith or with reasonable grounds in failing to pay overtime compensation, Plaintiffs and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

45.     As a result of these violations of the FLSA's overtime pay provisions, compensation has been unlawfully withheld by Bank of America from Plaintiffs and all similarly situated employees.  Accordingly, pursuant to 29 U.S.C. § 216(b), Bank of America is liable for the unpaid overtime premium pay along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

46.     Plaintiffs brings Count I, the FLSA claim arising out of Bank of America's overtime violations, as an "opt in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and the following collective action class:

All current and former non-exempt Bank of America employees who received any nondiscretionary PPP incentive payments, however denoted, that were not included in their regular rate of pay in workweeks for which they worked more than forty (40) hours, and/or employees who were not paid overtime at all for

their work on the PPP loan program within the United States[1] at any time from three (3) years prior to the filing of the initial Class and Collective Action Complaint to the present, plus any applicable tolling period(s).

Plaintiffs' FLSA claim may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).

47.     Plaintiffs, individually and on behalf of all others similarly situated, seek relief on a collective basis challenging Bank of America's above-described FLSA violations.  The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from Bank of America's records, and potential opt-in plaintiffs may easily and quickly be notified of the pendency of this action.

48.     Plaintiffs bring Count II (Unpaid Overtime in Violation of Laws of Multiple States) pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4). Plaintiffs bring this action on behalf of themselves and all others similarly situated, and seeks to represent the following class:

> All current and former non-exempt Bank of America employees who received any nondiscretionary PPP incentive payments, however denoted, that were not included in their regular rate of pay, and/or employees who were not paid overtime at all for their work on the PPP loan program, in workweeks for which they worked more than the statutory threshold for overtime hours within the states of Alaska, Colorado, Connecticut, Delaware, Georgia, Hawaii, Illinois, Kentucky, Michigan, Minnesota, Missouri, Montana, Nevada, New Hampshire, New Jersey, New Mexico, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, Vermont, Virginia, Washington, West Virginia, or Wisconsin during the relevant limitations period.

Excluded from the Class are Bank of America, any entity in which Bank of America has a controlling interest, any of the officers or directors of Bank of America, the legal representatives, heirs, successors, and assigns of Bank of America, anyone employed with Plaintiffs' counsel's firms, and any Judge to whom this case is assigned, and his or her immediate family.

---

[1] Other than those who worked in the states of New York and California.

49.    Plaintiffs' state law claims (Counts II) described in detail below, satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

50.    The class numbers in the thousands of persons.  As a result, joinder of all class members in a single action is impracticable.  Class members may be informed of the pendency of this action through regular mail, e-mail, and/or posting of an approved notice.

51.    There are common questions of fact and law to the classes that predominate over any questions affecting only individual class members.  The questions of law and fact common to the classes arising from Bank of America's actions include, without limitation, the following:

- Whether Bank of America violated state overtime laws when it excluded nondiscretionary PPP incentive payments from Plaintiffs and similarly situated employees' regular rates of pay;

- Whether Bank of America violated state overtime laws when it calculated and paid Plaintiffs and similarly situated employees' overtime pay as 1.5 times their lower, pre-PPP loan program rates of pay;

- Whether Bank of America violated state overtime laws when it failed to pay any overtime wages to formerly exempt employees who were assigned to perform non-exempt work on the PPP loan program; and

- Whether Bank of America's conduct and practices were willful and lacking a good faith legal basis.

52.    The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient

adjudication of the state law claims. Plaintiffs' claims are typical of those of the respective classes in that class members have been employed in the same or similar positions as Plaintiffs and were subject to the same or similar unlawful pay practices as Plaintiffs. A class action is the superior method for the fair and efficient adjudication of Plaintiffs' claims. Bank of America has acted or refused to act on grounds generally applicable to the class. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Bank of America, and/or substantially impair or impede the ability of class members to protect their interests. Plaintiffs are adequate representatives because they are members of the classes they seek to represent, and their interests do not conflict with the interests of the members of those classes. The interests of the members of the classes will be fairly and adequately protected by Plaintiffs and their undersigned counsel, who are experienced prosecuting complex wage and hour, employment, and class action litigation.

53.   Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy. It would be impracticable and undesirable for each member of the classes who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in consistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

## **TOLLING AND ACCRUAL OF THE STATUTES OF LIMITATIONS**

54.   Plaintiffs and other similarly situated employees hereby invoke Kansas Supreme Court Administrative Order 2020-PR-016 and K.S.A. § 20-172, tolling the statute of limitations for their claims from March 19, 2020 until April 15, 2021.

55.     Plaintiffs and other similarly situated employees are also entitled to the benefit of equitable tolling and/or the discovery rule for the accrual of the limitations period(s) for their claims.

56.     Bank of America took affirmative measures to conceal its violations of the law such that Plaintiffs and other similarly situated employees did not discover, and by reasonable diligence could not have discovered, that they were being underpaid for their overtime work. This concealment was accomplished by various means, including but not limited to the following:

- Failing to provide Plaintiffs and other similarly situated employees with paystubs or other pay records that clearly denoted their regular rate of pay used for overtime calculations and the inputs and bases for calculating the same, and instead providing them with paystubs that were incomprehensible and bewildering for the average employee and failed to state their regular rate of pay or the basis for its calculation;

- Disseminating opaque, confusing, and misleading communications and policies concerning how overtime was calculated and paid for employees working on the PPP loan program and by failing to explain to employees how their pay was calculated;

- Taking affirmative steps to ensure that its overtime pay practices for employees working on the PPP loan program were not put in writing. For instance, during one conference call discussing compensation and payment of overtime for the PPP loan program, Bank of America management told employees "we're not circulating this in writing, so do listen carefully."

- On other occasions, explicitly instructing employees to not record video conferences and calls on which topics concerning compensation for employees working on the PPP loan program were discussed by management;

- Explicitly instructing employees not to forward emails regarding compensation for work on the PPP loan program to anyone outside the Bank of America organization.

57.     Plaintiffs and other similarly situated employees have not had notice or constructive knowledge of the requirement that they file a case to preserve their rights, and their ignorance of the requirement that they do so was reasonable. Most if not all absent members of the putative Class and Collective have had no realistic way of knowing that their overtime rates were miscalculated or that they were underpaid for their overtime work.

58.     Plaintiffs were diligent in pursuing their rights once they became aware that they were underpaid in violation of the law, and other similarly situated employees are likely to be similarly diligent in pursuing their rights once given the opportunity to do so.

59.     Bank of America will suffer no undue prejudice by members of the Class and Collective being permitted to pursue their claims for unpaid overtime wages arising from their work on the PPP loan program in 2020 and 2021.

**COUNT I - FLSA (Unpaid Overtime Wages)**
**Arising Out of Bank of America's Regular Rate Miscalculation and Exemption**
**Misclassification Policies**

60.     Plaintiffs re-allege the allegations set forth above.

61.     Bank of America violated the FLSA by failing to pay Plaintiffs and other similarly situated employees for all overtime hours worked at one and one-half times the regular rate for all hours worked in excess of forty hours in a workweek.

62. Specifically, the FLSA requires that employees are paid one and one-half times their "regular rate" of pay. The "regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109.

63. In calculating Plaintiffs' and other similarly situated employees' overtime pay, Bank of America improperly excluded a significant item of the employees' total compensation for the workweek, namely, their nondiscretionary PPP incentive pay. As a result, Plaintiffs and other similarly situated employees' overtime pay was not based on the proper regular rate of pay under the FLSA, but instead calculated from a lower amount.

64. Additionally, other employees were misclassified as exempt from the FLSA's overtime requirements, even though the PPP loan program consisted mostly or entirely of non-exempt job duties, and as a result, were not paid any overtime at all.

65. Due to these practices of miscalculation and misclassification, Plaintiffs and other similarly situated employees were paid less than required under the FLSA for each overtime hour worked.

66. Bank of America has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiffs and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay pursuant to 29 U.S.C. § 216(b). Alternatively, should the Court find Bank of America did act with good faith and reasonable grounds in failing to pay overtime pay, Plaintiffs and other similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

WHEREFORE, on Count I of this Class and Collective Action Complaint, Plaintiffs and all similarly situated employees demand judgment against Bank of America and prays this Court:

a.  Issue notice to all similarly situated employees of Bank of America informing them of their right to file consents to join the FLSA portion of this action;

b.  Award Plaintiffs and all similarly situated employees damages for unpaid overtime wages under 29 U.S.C. § 216(b);

c.  Award Plaintiffs and all similarly situated employees liquidated damages under 29 U.S.C. § 216(b);

d.  Award Plaintiffs and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

e.  Award Plaintiffs and all similarly situated employees attorneys' fees and costs under 29 U.S.C. § 216(b);

f.  Award Plaintiffs and all similarly situated employees such other relief as the Court deems fair and equitable.

### COUNT II – State Law Violations (Unpaid Overtime Wages)
**Arising Out of Bank of America's Regular Rate Miscalculation and Exemption Misclassification Policies**

67.  Plaintiffs re-allege the allegations set forth above.

68.  During all times relevant to this action, Plaintiffs and other similarly situated employees were the employees of Bank of America, and Bank of America was their employer.

69.  Bank of America's uniform, nationwide, and company-wide policies and practices described herein violated the various overtime statutes of the several states listed in the subsequent paragraph by improperly excluding nondiscretionary PPP incentive pay from its

employees' regular rate and failing to pay any overtime to employees classified as exempt who were assigned to work on the PPP loan program, thereby resulting in unpaid overtime owed to Plaintiffs and other similarly situated employees.

70.    Bank of America's failure to pay overtime to its employees is in violation of the following state overtime laws, each of whose relevant terms are materially equivalent such that a common violation may be established on a class-wide basis:

- <u>Alaska</u> – Alaska Stat. § 23.10.060 *et seq.*;

- <u>Colorado</u> – Colo. Rev. Stat. §§ 8–6–101 *et seq.*; 7 Colo. Code Regs § 1103–1(4) *et seq.*;

- <u>Connecticut</u> – Conn. Gen. Stat. Ann. § 31–76c *et seq.*;

- <u>Delaware</u> – Del. Code Ann. tit. 19, § 1102 *et seq.*;

- <u>Georgia</u> – Ga. Code Ann. § 9-3-22 *et seq.*;

- <u>Hawaii</u> – Haw. Rev. Stat. Ann. § 387–3 *et seq.*;

- <u>Illinois</u> – 820 Ill. Comp. Stat. Ann. 105/4a *et seq.*;

- <u>Kansas</u> – K.S.A. § 44-313 *et seq.*;

- <u>Kentucky</u> – Ky. Rev. Stat. Ann. § 337.285 *et seq.*;

- <u>Michigan</u> – Mich. Comp. Laws Ann. § 408.414a *et seq.*;

- <u>Minnesota</u> – Minn. Stat. Ann. § 177.23 *et seq. et seq.*;

- <u>Missouri</u> – Mo. Ann. Stat. § 290.505 *et seq.*;

- <u>Montana</u> – Mont. Rev. Code Ann. § 39–3–405 *et seq.*;

- <u>Nevada</u> – Nev. Rev. Stat. § 608.018 *et seq.*;

- <u>New Hampshire</u> – N.H. Rev. Stat. Ann. § 279:21 *et seq.*:

- <u>New Jersey</u> – N.J. Stat. Ann. § 34:11–56a4 *et seq.*;

- <u>New Mexico</u> – N.M. Stat. Ann. § 50–4–22 *et seq.*;

- <u>North Carolina</u> – N.C. Gen. Stat. Ann. § 95–25.4 *et seq.*;

- <u>North Dakota</u> – N.D. Admin. Code 46–02–07–02(4) *et seq.*;

- <u>Ohio</u> – Ohio Rev. Code Ann. § 4111.03 *et seq.*;

- <u>Oklahoma</u> – Okla. Stat. Ann. tit. 74, § 840–2.15 *et seq.*;

- <u>Oregon</u> – Or. Rev. Stat. Ann. §§ 653.055, 653.261 *et seq.*;

- <u>Pennsylvania</u> – 43 Pa. Stat. Ann. § 333.104 *et seq.*;

- <u>Rhode Island</u> – 28 R.I. Gen. Laws Ann. § 28–12–4.1 *et seq.*;

- <u>Vermont</u> – Vt. Stat. Ann. tit. 21, § 384 *et seq.*;

- <u>Virginia</u> – Va. Code Ann. § 40.1–29.2 *et seq.*;

- <u>Washington</u> – Wash. Rev. Code Ann. § 49.46.130 *et seq.*;

- <u>West Virginia</u> – W. Va. Code Ann. § 21–5C–3 *et seq.*; and

- <u>Wisconsin</u> – Wis. Admin. Code DWD § 274.015 *et seq.*

71.     Due to Bank of America's policies and practices of miscalculation and misclassification, Plaintiffs and other similarly situated employees were paid less than required under the above-listed state laws for each overtime hour worked.

72.     Bank of America's policies and practices were willful in nature and not the result of a good faith mistake.

WHEREFORE, on Count II of this Class and Collective Action Complaint, Plaintiffs and all similarly situated employees demand judgment against Bank of America and prays this Court:

a.     Certify the state law claim set forth in Count II above as a class action pursuant to Fed. R. Civ. P. 23;

b.  Award Plaintiffs and the Class damages for the amount of unpaid wages due, along with all liquidated and statutory damages provided by law;

c.  Award Plaintiffs and the Class pre-judgment and post-judgment interest as provided by law;

d.  Award Plaintiffs and the Class attorneys' fees and costs; and

e.  Award Plaintiffs and the Class such other relief as the Court deems fair and equitable.

## DEMAND FOR JURY TRIAL AND DESIGNATION OF PLACE OF TRIAL

Plaintiffs hereby request a trial by jury of all issues so triable. Plaintiffs designate the federal court in Kansas City, Kansas as the place of trial.

Dated:  August 18, 2023

Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

*/s/ George A. Hanson*
George A. Hanson, KS Bar # 16805
Alexander T. Ricke, KS Bar # 26302
Caleb J. Wagner, D Kan # 78945
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:      (816) 714-7100
Facsimile:      (816) 714-7101
hanson@stuevesiegel.com
ricke@stuevesiegel.com
wagner@stuevesiegel.com

*Attorneys for Plaintiffs*