**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

|  |  |
|---|---|
| RICHARD MARCH, *et al*., individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 2:23-cv-02360-HLT-TJJ |
| v. | |
| BANK OF AMERICA, N.A., | |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION
<u>FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

PRELIMINARY APPROVAL AND NOTICE........................................................................ 2

ARGUMENT ..................................................................................................................... 3

I.      The Court Should Grant Final Approval of the Settlement. ............................... 3

        A.      The Class Representatives and Class Counsel adequately represented the Class. . 4

        B.      The parties negotiated the settlement at arm's length............................. 5

        C.      The relief provided to the Class is adequate. ......................................... 6

                i.      The relief provided to the class is adequate considering the costs, risks, and delay of trial and appeal................................................. 8

                ii.      The relief provided to the class is adequate considering the effectiveness of distributing relief to the class.................................. 9

                iii.      The relief provided to the class is adequate considering the terms of the proposed award of attorneys' fees. ............................. 10

                iv.      The relief provided to the class is adequate considering there are no agreements required to be identified under Rule 23(e)........................... 11

        D.      The Settlement Treats Class Members Equitably to One Another. .................. 12

II.     Class Certification for Settlement Purposes is Appropriate. ........................... 12

        A.      Numerosity is Satisfied .................................................................... 13

        B.      Commonality is Satisfied .................................................................. 13

        C.      Typicality is Satisfied ...................................................................... 14

        D.      Adequacy is Satisfied....................................................................... 15

        E.      Predominance is Satisfied .................................................................. 16

        F.      Superiority is Satisfied ..................................................................... 17

        G.      The Court Should Confirm the Appointments of Class Counsel and Class Representatives. ........................................................................... 18

CONCLUSION................................................................................................................. 18

CERTIFICATE OF SERVICE ........................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adamson v. Bowen*,
   855 F.2d 668 (10th Cir. 1988) ................................................................. 14

*Aks v. Southgate Tr. Co.*,
   1992 WL 401708 (D. Kan. Dec. 24, 1992) .............................................. 4

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997).................................................. 5, 12, 13, 17

*Amgen, Inc. v. Conn. Retirement Plans and Trust Funds*,
   568 U.S. 455 (2013).................................................................. 16

*CGC Holding Co. v. Broad & Cassel*,
   773 F.3d 1076 (10th Cir. 2014) ........................................... 16, 17

*DG ex rel. Stricklin v. Devaughn*,
   594 F.3d 1188 (10th 2010)....................................................... 13

*Dillworth v. Case Farms Processing, Inc.*,
   2010 WL 776933 (N.D. Ohio Mar. 8, 2010) .................................. 7

*Emig v. Am. Tobacco Co.*,
   184 F.R.D. 379 (D. Kan. 1998)................................................ 13

*Garcia v. Tyson Foods, Inc.*,
   2012 WL 5985561 (D. Kan. Nov. 29, 2012) ............................. 5, 15

*Gomez v. Epic Landscape Prods., L.C.*,
   2024 WL 4605146 (D. Kan. Oct. 29, 2024) ............................... 13

*Grant v. Capital Mgmt. Servs., L.P.*,
   2014 WL 888665 (S.D. Cal. Mar. 5, 2014) ................................. 9

*Hershey v. ExxonMobil Oil Corp.*,
   2012 WL 5306260 (D. Kan. Oct. 26, 2012) ............................... 10

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000)......................................... 9

*In re Currency Conversion Fee Antitrust Litig.*,
   264 F.R.D. 100 (S.D.N.Y. 2010) ............................................. 18

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005)..................................................... 10

*In re Syngenta AG MIR 162 Corn Litig.*,
   357 F. Supp. 3d 1094 (D. Kan. 2018) ........................................................ 11

*In re Syngenta AG MIR 162 Corn Litig.*,
   61 F.4th 1126 (10th Cir. 2023) ....................................................... 10, 11

*In re Urethane Antitrust Litig.*,
   768 F.3d 1245 (10th Cir. 2014) .............................................................. 16

*In re Viropharma Inc. Sec. Litig.*,
   2016 WL 312108 (E.D. Pa. Jan. 25, 2016) .............................................. 6

*Jones v. Nuclear Pharmacy, Inc.*,
   741 F.2d 322 (10th Cir.1984) ................................................................. 4

*Kauffman v. U-Haul Int'l, Inc.*,
   2019 WL 1785453 (E.D. Pa. Apr. 24, 2019) ......................................... 7

*Komoroski v. Util. Serv. Partners Priv. Label, Inc.*,
   2017 WL 3261030 (W.D. Mo. July 31, 2017) ........................................ 14

*Krant v. UnitedLex Corp.*,
   2024 WL 5187565 (D. Kan. Dec. 20, 2024) ........................................... 6

*Li v. HLY Chinese Cuisine Inc.*,
   596 F. Supp. 3d 439 (E.D.N.Y. 2022) ................................................... 7

*Marcus v. Kansas Dep't of Revenue*,
   209 F. Supp. 2d 1179 (D. Kan. 2002) .................................................... 6

*Marquez v. Midwest Div. MMC, LLC*,
   2022 WL 17093036 (D. Kan. Nov. 21, 2022) ........................................ 11

*Phillips Co. v. Shutts*,
   472 U.S. 797 (1985) ................................................................................ 17

*Riley v. PK Mgmt., LLC*,
   2019 WL 6998757 (D. Kan. Dec. 20, 2019) ........................................... 15

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
   314 F.3d 1180 (10th Cir. 2002) .............................................................. 15

*Salter v. Quality Carriers, Inc.*,
   2021 WL 2333098 (C.D. Cal. 2021) ....................................................... 14

*Stanspec Corp. v. Jelco, Inc.*,
   464 F.2d 1184 (10th Cir.1972) ............................................................... 4

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*,
    209 F.R.D. 159 (C.D. Cal. 2002) ................................................................. 16

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ........................................................................................ 16

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .................................................................................. 13, 14

*Whitton v. Deffenbaugh Indus., Inc.*,
    2016 WL 4493570 (D. Kan. Aug. 26, 2016) ................................................ 13

*Wortman v. Sun Oil Co.*,
    241 Kan. 226, 755 P.2d 488 (1987) ............................................................... 8

**Rules**

Fed. R. Civ. P. 23 ......................................................................................... *passim*

**Regulations**

29 CFR § 541.706 ................................................................................................ 8

29 CFR § 778.201 ................................................................................................ 9

**Other Authorities**

1 Newberg and Rubenstein on Class Actions § 3:12 (6th ed.) ......................... 13

1 Newberg and Rubenstein on Class Actions § 3:29 (6th ed.) ......................... 14

1 Newberg and Rubenstein on Class Actions § 3:57 (6th ed.) ......................... 15

## INTRODUCTION

The Court previously granted Plaintiffs' motion to preliminarily approve and send notice of this class action settlement to approximately 7,700 current and former Bank of America employees because the Court found the settlement would likely be approved under Rule 23(e). Dkt. 57 at 1. Class members' reaction to the notice confirms that the Court's preliminary approval order was well-founded. Following a successful notice program that reached 99% of the class, no class members objected to the settlement and only a small fraction—a quarter of one percent—opted out. The absence of class member opposition confirms what the objective metrics all demonstrate: this settlement is fair, reasonable, and adequate and should be granted final approval.

Plaintiffs' wage and hour claims arose from the Bank's administration of COVID-era PPP loans with the work at issue mostly occurring during a discrete 16-week period between April and July 2020. Plaintiffs principally alleged the Bank pressed exempt workers into performing non-exempt loan processing work without being paid overtime, and that the Bank promised non-exempt workers incentive payments that were improperly excluded from the regular rate while also being offset against statutory overtime. As explained within, the Bank's vigorous defense reflects the legitimate risks Plaintiffs' claims faced, both procedurally and substantively.

After completing Phase I discovery in parallel federal district court actions in Kansas, California, and New York and with two fully briefed class certification motions pending, the parties reached a $17,500,000 non-reversionary class settlement following their third full-day mediation. Net of all projected attorneys' fees, expenses, and administrative costs, the average class member recovery is approximately $1,469 per person with the highest payment exceeding $30,000. Importantly, there is no claims process; instead, checks will be automatically distributed to all class members who did not opt out upon final approval. In exchange for these payments, class members agree to an appropriately narrow release of claims tailored to the facts asserted in

1

the Amended Complaint. Further, none of this money will revert to the Bank. Any uncashed settlement checks will be transferred to the state unclaimed property fund where the class member worked to be held for that class member. By any measure, Class Counsel achieved a favorable result despite meaningful risk that should be approved as fair, reasonable, and adequate.

In support of this motion, Plaintiffs submit, along with this memorandum, the Declaration of George A. Hanson and the Declaration of Jeffrey Mitchell of Analytics Consulting LLC. Plaintiffs also previously moved for an award of attorneys' fees and expenses as well as service awards. *See* Dkt. 59-60. For the reasons explained below, Plaintiffs request the Court grant final approval of the settlement and award the requested attorneys' fees, expenses, and service awards.

## PRELIMINARY APPROVAL AND NOTICE

Plaintiffs extensively detailed the nature of the claims and defenses at issue, as well as Class Counsel's investigation and work on the case, in briefing preliminary approval (Dkt. 55-56) and Plaintiffs' motion for attorneys' fees, expenses, and service awards (Dkt. 59-60). For the sake of brevity, Plaintiffs focus their efforts here on analyzing the pertinent Rule 23 factors in light of the class response and rely on their earlier recitation of the procedural history and legal issues.

Plaintiffs moved for preliminary approval of the settlement on August 12, 2025. Dkt 55. In granting that motion, the Court found it would likely approve the settlement as fair, reasonable, and adequate and could certify the class for purposes of settlement, and thus directed that notice be issued to the class. Dkt. 57 at ¶¶ 1-7. In addition, for purposes of issuing notice of the settlement, the Court appointed George A. Hanson, Alexander T. Ricke, and Caleb J. Wagner, of Stueve Siegel Hanson LLP as Class Counsel. *Id*. ¶ 6. The Court also approved the parties' form and plan of notice and directed the parties to carry it out. *Id*. at ¶¶ 7-8.

Class Counsel engaged Analytics Consulting LLC to provide settlement administration services, including the mailing of the Court-approved notice. Consistent with the Settlement

Agreement, the Bank sent Analytics a data file identifying the class members, their contact information, and the information necessary to calculate their settlement payments. Mitchell Decl. at ¶¶ 6-7. After running each class member's address through the National Change of Address database, Analytics mailed the notice to all class members by first class mail on September 26, 2025. *Id.* at ¶¶ 7-8. 207 notices were returned to Analytics by the U.S. Postal Service as undeliverable. *Id*. at ¶ 10. For those class members, Analytics conducted a skip trace to ascertain a valid address for the affected individuals and was able to remail notice to 133 of them. *Id.* The Notice was thus successfully delivered to approximately 99% of the class. *Id.*

In connection with notice, Analytics also established a toll-free telephone number for class members to contact them for more information and where they could speak to a live operator to answer questions. *Id.* at ¶ 11. Class members could also e-mail a dedicated e-mail address with questions about the settlement. *Id.* at ¶ 12. Analytics also established and continues to maintain a dedicated settlement website where class members have been able to obtain detailed information about the case and review key documents, such as the complaint, class notice, settlement agreement, and preliminary approval order, among others. *Id.* at ¶¶ 14-16. The telephone number, e-mail address, and settlement website were referenced in the Notice. *Id.* at ¶¶ 11-12, 14.

The deadline for class members to object or request exclusion was November 10, 2025. No class members objected to the settlement. *Id*. at ¶ 18. Only 21 of the 7,702 class members—about 0.27%—requested to be excluded. *Id*. at ¶ 17.

## **ARGUMENT**

### I.    **The Court Should Grant Final Approval of the Settlement.**

A class action can only be settled with a court's approval. Fed. R. Civ. P. 23(e). To approve a settlement under Rule 23(e)(2), the Court must find that it is "fair, reasonable, and adequate" after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Paragraphs (A) and (B) of Rule 23(e)(2) "identify matters that might be described as 'procedural' concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement," while paragraphs (C) and (D) "focus on what might be called a 'substantive' review of the terms of the proposed settlement." Fed. R. Civ. P. 23, Advisory Committee Notes (Dec. 1, 2018) (hereafter "Advisory Committee Notes").

"The authority to approve a settlement of a class action is in the sound discretion of the trial court." *Aks v. Southgate Tr. Co.*, 1992 WL 401708, at *10 (D. Kan. Dec. 24, 1992) (citing *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322 (10th Cir.1984)). "The court's decision to approve the settlement should be influenced by the strong federal policy of encouraging settlement." *Id.* (citing *Stanspec Corp. v. Jelco, Inc.*, 464 F.2d 1184, 1186 (10th Cir.1972)).

**A.      The Class Representatives and Class Counsel adequately represented the Class.**

To approve a settlement, Rule 23(e)(2)(A) requires a court to find that "the class representatives and class counsel have adequately represented the class." This factor focuses "on

the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23, Advisory Committee Notes. This factor favors final approval.

First, the interests of the Plaintiffs are aligned with those of other settlement class members, as they all suffered and seek to redress the same injuries: unpaid wages for work on the Bank's PPP loan program. *See Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 625–26 (1997) ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (cleaned up).

Next, Class Counsel are highly experienced in complex class actions and that is particularly true with respect to wage and hour litigation. *See* Dkt. 55-2 at ¶¶ 56-67; *Garcia v. Tyson Foods, Inc.,* 2012 WL 5985561, at *4 (D. Kan. Nov. 29, 2012), *aff'd,* 770 F.3d 1300 (10th Cir. 2014) (stating with respect to Stueve Siegel Hanson LLP that "it appears that plaintiffs' counsel's experience in wage-hour class actions has unmatched depth."). This knowledge and experience enabled Class Counsel to efficiently conduct Phase I discovery across three cases, move for class certification in two of them, and negotiate a well-informed, global settlement. Class Counsel's research and creative approach allowed them to develop novel strategies to address the challenges posed by the Bank's defenses. This paid significant dividends for the class. In fact, absent Class Counsel's timely work, class members almost certainly would have ended up with *nothing* as the limitations periods on their claims would have lapsed absent counsel acting quickly to file and prosecute the litigation. This factor is met, and final approval is warranted.

**B.    The parties negotiated the settlement at arm's length.**

This factor focuses on whether the settlement negotiations "were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e), Advisory Committee Notes. Here, this factor is satisfied because the settlement was achieved after three arm's-length mediations presided over by three separate, well-respected mediators (Judge Gandhi (Ret.) of

JAMS, Mr. Fuchsman, and then finally Mr. Dickstein). Even after three full-day mediations at various stages of the litigation, final settlement in this case required weeks of follow-up conferences presided over by Mr. Dickstein, which culminated in the parties only reaching settlement through a double-blind mediator's proposal. Dkt. 55-2 at ¶¶ 29-32. That process evidences a contested, arm's length negotiation. *See, e.g., Marcus v. Kansas Dep't of Revenue*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002) (finding this factor satisfied where the settlement was reached through mediation done "by experienced counsel for the class"); *Krant v. UnitedLex Corp.*, 2024 WL 5187565, at *3 (D. Kan. Dec. 20, 2024) (same). Indeed, some courts have found that "participation of an independent mediator . . . virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties." *In re Viropharma Inc. Sec. Litig.*, 2016 WL 312108, at *8 (E.D. Pa. Jan. 25, 2016). This factor favors final approval.

### C.    The relief provided to the Class is adequate.

Rule 23(e) requires the Court to consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C)(i-iv). In this case, these factors point clearly towards settlement approval.

All the factors identified by Rule 23(e)(2)(C) should be viewed in light of the meaningful monetary benefit this settlement confers on class members, the direct mailing of checks, and the tailored release resolving claims about a legacy program that largely concluded five years ago and that principally focused on a discrete, 16-week period of time. The average payment to class members will be $1,469—a meaningful amount by any measure, but especially so when considering the principal impact of the challenged practice here lasted only a few months. Based

on Class Counsel's analysis of the Bank's class-wide wage and hour records with the assistance of expert statisticians, the average estimated amount of unpaid wages is $2,095 for non-exempt workers and $3,046 for exempt workers. Dkt. 60-1 at ¶ 16. In other words, Class Counsel's expert data analysis showed unpaid wages of approximately $17,522,055. Depending on the assumptions made, the $17.5 million common fund approximates make-whole relief for the class.

Even after accounting for attorneys' fees, expenses, service awards, and administration costs, the net fund represents approximately 64% of the unpaid wages alleged. That marks an excellent result considering the risks posed by class certification, summary judgment, trial, and appeal. *See, e.g., Kauffman v. U-Haul Int'l, Inc.*, 2019 WL 1785453, at *3 (E.D. Pa. Apr. 24, 2019) (approving wage and hour settlement where "Plaintiff will receive payment of a meaningful portion (approximately 28%) of his alleged unpaid overtime wages..."); *Dillworth v. Case Farms Processing, Inc.,* 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010); (approving a class action settlement that recovered "approximately one-third of claimed unpaid wages" and finding "there can be no doubt that the results achieved for the class members are exceptional."); *Li v. HLY Chinese Cuisine Inc*., 596 F. Supp. 3d 439, 448 (E.D.N.Y. 2022) (approving settlement where the recovery of wages amounted to "approximately 13.8% of the total alleged damages…").

Moreover, payments are substantial. The average estimated *per capita* settlement payment net of all fees and costs is $1,469 across the class, with an average exempt worker's payment of $1,941 and an average non-exempt worker's payment of $1,359.[1] Further, given that these settlement payments are principally allocated proportional to each class member's damages, the

---

[1] These average estimated settlement payments increased slightly from earlier projections because Class Counsel moved for an award of expenses of $222,081.84 while the notice to class members (and thus the earlier fund analysis) contemplated expenses of $250,000. In addition, the payments allocated to the 21 individuals who opted out will be reallocated to the class.

highest exempt worker's settlement payment is more than $35,000 and the highest non-exempt worker's settlement payment is more than $16,000. Mitchell Decl. at ¶¶ 19-20.

### i.    The relief provided to the class is adequate considering the costs, risks, and delay of trial and appeal.

Considering the costs, risks, and delay of trial and appeal, the proposed settlement satisfies Rule 23(e)(2)(C)(i). As noted above, the settlement confers a significant monetary payment on class members as the $17,500,000 common fund represents significant relief on a *per capita* basis—$1,469 on average. That is a noteworthy outcome in any wage and hour case, but it is particularly so when weighed against the procedural and substantive risks in the case.

Although Class Counsel believe Plaintiffs' claims are strong, there is no question Plaintiffs' claims faced uncertainty on the path to a class recovery. To obtain *any* recovery, Plaintiffs would have had to prevail on their motion to certify a class comprising 48 separate states and corresponding state laws—a proposition the Bank vigorously contested. *See* Dkt. 43. Moreover, Plaintiffs' argument for the timeliness of most claims hinged on the Court's application of Kansas' COVID-19 tolling order to out-of-state class members, a contention that rested on the vitality of a 1987 Kansas Supreme Court opinion (Westlaw lists only thirteen cases having cited it in more than 38 years since it was decided; none since 2011). *See Wortman v. Sun Oil Co.* 241 Kan. 226, 232, 755 P.2d 488, 493 (1987). Class Counsel cleared these procedural hurdles to deliver a strong result.

Plaintiffs also faced significant resistance on the merits. The Bank vigorously contested nearly every aspect of their claims. As to the exempt-classified workers, the company relied heavily on a regulation stating that employees do not lose their exemption when they perform nonexempt work responding to "emergencies", *see* 29 CFR § 541.706, along with a Department of Labor bulletin stating that this principle applied to temporary assignments in response to the COVID-19 pandemic. As to the non-exempt workers, Plaintiffs' theory of recovery turned on the

interpretation of a complex web of regulations regarding when certain premium payments or incentives can be credited by an employer toward its statutory overtime obligations and when they cannot. *See* 29 CFR §§ 778.201(c); 778.202; 778.203; 778.207; 778.211. Plaintiffs believe they had the better of each of these arguments. But all required the application of rarely litigated legal principles to unique factual circumstances. That meant a high degree of risk.

Indeed, Plaintiffs faced significant risk at class certification, summary judgment, trial, and possibly then on appeal, all of which would have been lengthy and complex. *See, e.g., In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) (recognizing that "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them"). The settlement, in contrast, delivers significant money to class members with no risk. *See Grant v. Capital Mgmt. Servs., L.P.*, 2014 WL 888665, at *3 (S.D. Cal. Mar. 5, 2014) ("The court shall consider the vagaries of the litigation and compare the significance of immediate recovery by way of compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in hand instead of a prospective flock in the bush") (citations and quotations omitted). This factor strongly supports approval.

          **ii.**     **The relief provided to the class is adequate considering the effectiveness of distributing relief to the class.**

Under this factor, the Court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding." Advisory Committee Notes.  In this case, class members are not required to file any claim forms or take any affirmative steps to receive a settlement payment. Instead, unless class members request to be excluded (roughly a quarter of one percent did), they will automatically be sent a check for their settlement amount. Dkt. 55-1 at § III(I)(1). Moreover, every individual

covered by the settlement was sent an individualized notice form to their last known address that explains the settlement and specifies his or her anticipated settlement payment amount and the allocation plan. *See* Mitchell Decl. at ¶ 9. This factor weighs in favor of settlement approval.

### iii. The relief provided to the class is adequate considering the terms of the proposed award of attorneys' fees.

This factor recognizes that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement." Advisory Committee Notes. Class Counsel previously moved for and justified an award of attorneys' fees in the amount of one-third of the settlement fund, or $5,833,333.33. *See* Dkt. 59-60. This requested fee is consistent with District and Circuit precedent. *See, e.g., In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126 (10th Cir. 2023) (awarding one-third of the common fund); *Hershey v. ExxonMobil Oil Corp.*, 2012 WL 5306260, at *8 (D. Kan. Oct. 26, 2012) ("an award of one-third the total settlement award is reasonable and appropriate."). Moreover, the Settlement Agreement is not contingent on the Court awarding a particular fee. Dkt. 55-1, Settlement Agreement, § III(H)(4).

Class Counsel previously addressed at length why the requested one-third fee is reasonable under the specific circumstances of this case. *See* Dkt. 60. Having now completed a successful direct notice process, the complete absence of opposition to the settlement—including Class Counsel's requested fee—supports the reasonableness of the fee. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005), *as amended* (Feb. 25, 2005) ("the absence of substantial objections by class members to the fee requests weighed in favor of approving the fee request.").

Likewise, the additional work performed by Class Counsel also supports the requested fee. Having now completed the notice process and in preparation for the final approval hearing, Class Counsel supplement the "time and labor" component of the *Johnson* factor analysis. Dkt. 60 at 22-23. With more work remaining, Class Counsel has currently expended nearly 3,700 hours for a

total lodestar at their standard rates of just over $3.5 million across the three cases now consolidated for settlement. Hanson Decl. at ¶¶ 2-3. Although the Tenth Circuit has often held that a lodestar crosscheck is not required and that such an analysis "can fail to account for the productive quality of an attorney's labor," *see In re Syngenta AG MIR 162 Corn Litig*., 61 F.4th 1129 at 1192 (10th Cir. 2023), here a crosscheck confirms the reasonableness of the requested fee. Class Counsel's requested one-third fee is a 1.6 multiplier on their current expenditure of time and is well below multipliers approved in this District. *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1115-16 (D. Kan. 2018) (noting that multipliers of 2 and 3 "are well within the range accepted by other courts, even in cases without trials"). And the work is not done—the multiplier will decrease as Class Counsel prepare for the final approval hearing, administer the settlement fund, and continue to communicate with class members about the settlement. *Marquez v. Midwest Div. MMC, LLC*, 2022 WL 17093036, at *6 (D. Kan. Nov. 21, 2022) (considering that future "work with the Settlement Administrator to process the class and collective action members' claims, answer their questions, and distribute their settlement awards" will increase lodestar and decrease multiplier, which supported the fee request).

After litigating three novel wage and hour cases across the country through class certification and achieving a groundbreaking result that provides meaningful payments to class members without a claims process in the face of legitimate risk, the Court can be satisfied that Class Counsel earned the requested fee. *See, e.g.,* Dkt. 60. This factor supports final approval.

### iv.    The relief provided to the class is adequate considering there are no agreements required to be identified under Rule 23(e).

The only agreement between the parties is the Settlement Agreement. Dkt. 55-2 at ¶ 34. This factor weighs in favor of final approval.

### D.    The Settlement Treats Class Members Equitably to One Another.

This factor seeks to prevent the "inequitable treatment of some class members *vis-a-vis* others." Advisory Committee Notes. Class Counsel worked diligently to create an allocation that ties distribution to the proportional value of each individual's claims. Class members' settlement allocation is based on the number of weeks worked on the PPP loan program, total incentives earned, rates of pay, and whether they were classified as exempt or nonexempt, recognizing that employees who worked on the program for longer periods sustained greater losses, and that exempt employees were underpaid what they were owed by a greater amount than nonexempt workers. *See* Dkt. 55-1, Exhibit B to Settlement Agreement, Plan of Allocation. Further, class members who worked in California or New York will receive additional enhancements to account for the relatively stronger protections provided by their states' wage and hour laws. *Id.* at ¶ 43. Thus, the class members with higher potential damages and strongest claims will recover the largest settlement payments. This factor weighs in favor of settlement approval.

## II.    Class Certification for Settlement Purposes is Appropriate.

Having determined that the settlement is fair, reasonable, and adequate under Rule 23(e)(2), the Court can turn to the second half of the final approval inquiry: whether the Court can grant final "[certification of] the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii). Plaintiffs move the Court to maintain class certification for settlement purposes.

Certification of a class for settlement purposes is proper when the plaintiff demonstrates that the proposed class and proposed class representative meet the four threshold prerequisites of Rule 23(a) commonly known as the "numerosity," "commonality," "typicality," and "adequacy of representation" elements, along with at least one of the three provisions of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). Where, as here, plaintiffs seek certification under Rule 23(b)(3), they must also demonstrate that common questions of law or fact predominate

over individual issues and that maintaining the suit as a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3); *Amchem Prods.*, 521 U.S. at 615-16. As a practical matter, "[j]udicial economy factors and advantages over other methods for handling the litigation" underlie these two tests. *Emig v. Am. Tobacco Co. Inc.*, 184 F.R.D. 379, 388 (D. Kan. 1998). Plaintiffs satisfy these requirements here.

Moreover, the settlement class is ascertainable, as it is comprised only of employees who worked on the PPP loan program, as demonstrated by the Bank's employment records. *See Gomez v. Epic Landscape Prods., L.C.*, 2024 WL 4605146, at *10 (D. Kan. Oct. 29, 2024) (ascertainability met when class is "identifiable [through] Defendants' employment records.").

## A.    Numerosity is Satisfied

Rule 23(a)(1) requires Plaintiffs to show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[A] class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone." 1 Newberg and Rubenstein on Class Actions § 3:12 (6th ed.); *Whitton v. Deffenbaugh Indus., Inc.*, 2016 WL 4493570, at *4 (D. Kan. Aug. 26, 2016) ("In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the Plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone."). Here, there are more than 7,000 class members. *See* Dkt. 55-2 at ¶ 37. Numerosity is met.

## B.    Commonality is Satisfied

Rule 23(a) further requires that questions of fact or law must exist that are common to the class as a whole. Fed. R. Civ. P. 23(a)(2). "[F]or purposes of Rule 23(a)(2) 'even a single common question' will do," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 369 (2011) (cleaned up); *accord DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th 2010), so long as "the determination

of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes,* 564 U.S. at 350. Here, such common questions include:

- Whether the Bank properly calculated and paid its employees' PPP incentives in conjunction with overtime;

- Whether the Bank used an improper pay calculation formula;

- Whether the Bank breached its contractual agreements, whose terms were uniform and standardized as to all class members, when it counted statutory overtime payments toward its PPP incentive obligations;

- Whether the Bank breached its contractual agreements, whose terms were uniform and standardized as to all class members, when it treated its PPP incentive promises as "enhanced overtime";

- Whether the Bank violated state overtime laws when it counted PPP incentive payments toward its overtime obligations, or otherwise failed to include all PPP incentives earned in its regular rate calculations; and

- Whether the Bank violated state overtime laws when it failed to pay any overtime to PPP employees who were classified as exempt.

The Rule 23(a)(2) commonality requirement is thus satisfied.

### C.    Typicality is Satisfied

Rule 23(a)(3) requires Plaintiffs show that "the claims of the representative parties are typical of the claims of the class." Fed. R. Civ. P. 23(a)(3). This "typicality" requirement "helps ensure that the plaintiff's interests are aligned with those of the represented group, so that in pursuing his own claims, the named plaintiff will also advance the interests of the class members." 1 Newberg and Rubenstein on Class Actions § 3:29 (6th ed.) (cleaned up). Its test is "not demanding", *Komoroski v. Util. Serv. Partners Priv. Label, Inc.*, 2017 WL 3261030, at *5 (W.D. Mo. July 31, 2017) (quotations omitted), requiring only that the lead plaintiffs' claims be "reasonably co-extensive with those of absent class members." *Salter v. Quality Carriers, Inc.*, 2021 WL 2333098, *7 (C.D. Cal. 2021). Typicality is satisfied when "the claims of the class representative and class members are based on the same legal or remedial theory." *Adamson v.*

*Bowen*, 855 F.2d 668, 676 (10th Cir. 1988); *see also Riley v. PK Mgmt., LLC*, 2019 WL 6998757, at *4 (D. Kan. Dec. 20, 2019) ("The claims of the representative plaintiffs need not be identical [] to those of the other class members.").

Here, Plaintiffs seek recovery of unpaid overtime wages and promised PPP incentive payments—just like the rest of the affected employees. Further, they have sought that relief by invoking the same statutory and common law principles as the class as a whole. They thus satisfy the typicality requirement.

### D.    Adequacy is Satisfied

Rule 23(a)(4) requires Plaintiffs to show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). They meet this requirement for substantially the same reasons they satisfy typicality (and the adequacy of representation Rule 23(e) factor discussed above). After all, "the adequacy of the class representative prong of Rule 23(a)(4) tends to merge with the requirement that the class representative's claims be typical of the class." 1 Newberg and Rubenstein on Class Actions § 3:57 (6th ed.). The adequacy requirement asks "whether the proposed representatives have any conflicts of interest with other class members", and whether they will "prosecute the action vigorously on behalf of the class." *Rutter & Wilbanks Corp. v. Shell Oil Co*., 314 F.3d 1180, 1187-88 (10th Cir. 2002). Like the class as a whole, Plaintiffs here advance the same types of wage claims and seek the same types of unpaid wages arising out of the Bank's pay practices for administering PPP loans. Their success and the success of the class are inherently intertwined. They are thus adequate class representatives.

Rule 23(a)(4) also requires that class counsel "fairly and adequately protect the interests of the class." *See id.* at 1187. Here, Plaintiffs have retained qualified counsel experienced in complex wage and hour litigation to protect the interests of the class. *See Garcia,* 2012 WL 5985561, at *4. Plaintiffs thus meet the adequacy requirement.

E.    **Predominance is Satisfied**

Predominance is satisfied if "questions of law or fact common to class members predominate over any questions affecting only individual members." Rule 23(b)(3); *see Amgen, Inc. v. Conn. Retirement Plans and Trust Funds*, 568 U.S. 455, 459 (2013). This predominance requirement does not require that *all* questions of law or fact be common. *See, e.g.*, *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1255 (10th Cir. 2014) ("Class-wide proof is not required for all issues."). Rather, it requires only that the common questions *predominate* over individual questions. *Id.* As the Supreme Court distilled it, "[t]he predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). Common questions are those wherein "the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof", as opposed to ones where "members of a proposed class will need to present evidence that varies from member to member." *Id.* In essence, "[t]he predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *CGC Holding Co. v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014).

Here, each class member's claim hinges on one of two overarching questions. For nonexempt employees, it is whether the Bank's method of calculating the PPP incentive payments in conjunction with statutory overtime complied with the law. And for exempt employees, it is whether PPP loan processing work qualified as exempt work. As courts have recognized, predominance is met when the focus is on the defendant's conduct, rather than that of the individual class members. *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 167 (C.D. Cal. 2002) ("[T]o determine predominance, the Court looks to whether the focus of the proposed class action will be on the words and conduct of the

16

defendants rather than on the behavior of the individual class members."). Here, the focus of Plaintiffs' theories is squarely on the Bank's uniform PPP pay practices. Predominance is met.

### F.    Superiority is Satisfied

Rule 23(b)(3) requires that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy," and sets forth the following factors:

> The matters pertinent to the findings include: (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). The superiority requirement ensures that a class action will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (internal quotation marks omitted); *see also CGC Holding Co. v. Broad & Cassel*, 773 F.3d 1076, 1096 (10th Cir. 2014). Because the claims are being certified for purposes of settlement, questions regarding the manageability of the case for trial purposes are not considered. *See Amchem Prod., Inc.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

A class action is the only reasonable method to fairly and efficiently adjudicate settlement class members' claims against the Bank. *See, e.g., Phillips Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("[c]lass actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . [in such a case,] most of the plaintiffs would have no realistic day in court if a class action were not available"). Certification avoids numerous individual actions (for those who can afford to sue), prevents inconsistent results, and ensures that settlement class members with

smaller claims have an opportunity for redress. *See In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 117 (S.D.N.Y. 2010) ("Many of the class members' claims will be small relative to the high costs of maintaining an antitrust action," and therefore "[s]treamlining the litigation in one forum will simplify the process and avoid inconsistency."). The superiority requirement is thus satisfied.

## G.   The Court Should Confirm the Appointments of Class Counsel and Class Representatives.

The Court appointed George A. Hanson, Alexander T. Ricke, and Caleb J. Wagner of Stueve Siegel Hanson LLP as Class Counsel pending final approval of the settlement. Dkt. 57 at ¶ 6. Upon final certification of the class for purposes of entry of judgment on the settlement, Plaintiffs request that these counsel be confirmed as Class Counsel under Rule 23(g)(1).

The Court likewise appointed Plaintiffs Richard March, Belinda Hollins, Diane Coluzzi, Michael Marchelos, Gary Lieb, Jean Lu, Giovanna Bolanos, and Claude Grant as Settlement Class Representatives. *Id.* at ¶ 5. Because Plaintiffs have diligently and successfully fulfilled their responsibilities as the representative of the class, the Court should confirm their appointment as Class Representatives consistent with the Settlement Agreement.

## <u>CONCLUSION</u>

Plaintiffs respectfully request that the Court enter an Order (1) granting final approval of the settlement as fair, reasonable, and adequate under Rule 23(e)(2); (2) granting final certification of the class for settlement purposes; (3) granting Plaintiffs' Unopposed Motion for an Award of Attorneys' Fees, Expenses, and Service Awards (Dkt. 59-60) and approving those awards as requested; and (4) entering final judgment on the settlement directing the parties to carry out the terms of the Settlement Agreement.

Dated: November 20, 2025                Respectfully submitted,

                                        **STUEVE SIEGEL HANSON LLP**

                                        */s/ George A. Hanson*
                                        George A. Hanson, KS Bar # 16805
                                        Alexander T. Ricke, KS Bar # 26302
                                        Caleb J. Wagner, D Kan # 78945
                                        460 Nichols Road, Suite 200
                                        Kansas City, Missouri 64112
                                        Telephone:     (816) 714-7100
                                        Facsimile:     (816) 714-7101
                                        hanson@stuevesiegel.com
                                        ricke@stuevesiegel.com
                                        wagner@stuevesiegel.com

                                        *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 20, 2025, the foregoing document was filed with the Court's CM/ECF system, which served a copy of the foregoing document on all counsel of record.

                                        */s/ George A. Hanson*
                                        Counsel for Plaintiff

19